UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CLAY MERRITT BURGON,

    Petitioner,

    v.

BRIAN WILLIAMS, SR., *et al.*,

    Respondents.

Case No. 2:14-cv-01128-RFB-DJA

ORDER

I.    <u>Introduction</u>

This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by Clay Merritt Burgon, a Nevada prisoner. The case is before the Court for adjudication of the claims remaining in Burgon's amended habeas petition. The Court will deny Burgon's petition, deny him a certificate of appealability, and direct the Clerk of the Court to enter judgment accordingly.

II.    <u>Background</u>

Police reports reveal the events that gave rise to the criminal charges against Burgon. <u>See</u> Justice Court Records, Exh. 1 (ECF No. 9-1, pp. 3–8). According to the police reports, on July 13, 2010, at approximately 1:25 a.m., an individual later identified as Burgon, wearing a red shirt or jacket and a nylon stocking over his face, and carrying a black backpack, entered a convenience store in Las Vegas, pointed a black semi-automatic handgun at the store clerk, and told him to put cigarettes into a black trash bag

and money from the register into the black backpack. See id. The store clerk complied, and Burgon left in a newer silver Mitsubishi SUV. See id. About twenty minutes later, police officers spotted a vehicle matching the description of the one in which Burgon left the scene of the robbery and activated their emergency lights. See id. Burgon took off and attempted to evade the police officers, reaching speeds of approximately 80 miles per hour, before crashing into a wall. See id. Burgon exited the vehicle carrying the black backpack and ran; the officers pursued Burgon on foot, caught him, and arrested him. See id. The black backpack contained a black semi-automatic handgun, an opened carton of cigarettes, a red jacket, and a nylon stocking. See id. A black plastic trash bag containing cigarettes consistent with those taken in the robbery was found in the vehicle Burgon was driving. See id. Burgon had $111 in cash, an amount consistent with that taken in the robbery, in his pocket. See id. The police viewed video footage from the scene of the robbery and positively identified Burgon as the perpetrator. See id.

On July 15, 2010, Burgon was charged in a criminal complaint with four felonies: robbery with use of a deadly weapon, possession of firearm by ex-felon, burglary, and stop required on signal of police officer. See Criminal Complaint, Exh. 2 (ECF No. 9-2). The criminal complaint was subsequently amended to change the charge of burglary to burglary while in possession of a firearm. See Amended Criminal Complaint, Exh. 3 (ECF No. 9-3). Burgon waived his right to a preliminary hearing and was bound over to the district court to answer for the charges. See Reporter's Transcript of Unconditional Waiver of Preliminary Hearing, July 29, 2010, Exh. 4 (ECF No. 9-4); Bindover and Order to Appear, Exh. 5 (ECF No. 9-5).

On August 6, 2010, Burgon was charged in the district court by information with robbery with use of a deadly weapon, burglary while in possession of a firearm, failure to stop on signal of a police officer, and ex-felon in possession of a firearm. See Information, Exh. 10 (ECF No. 9-10); Second Amended Information, Exh.18 (ECF No. 9-18). On March 3, 2011, Burgon agreed to plead guilty to robbery with use of a deadly weapon and burglary while in possession of a firearm, and, in return the State agreed not to pursue

the other charges. See Guilty Plea Agreement, Exh. 19 (ECF No. 9-19). Burgon entered his guilty plea on that same date. See Reporter's Transcript of Plea, Exh. 20 (ECF No. 9-20). Burgon was sentenced on May 5, 2011. *See* Reporter's Transcript of Sentencing, Exh. 21 (ECF No. 9-21). The State presented evidence that Burgon had been convicted of armed bank robbery in 2000 and robbery in 2005, and Burgon was sentenced under Nevada's habitual criminal sentencing laws to two consecutive terms of life in prison with the possibility of parole after ten years. See id. The judgment of conviction was entered May 12, 2011. See Judgment of Conviction, Exh. 23 (ECF No. 9-23).

Burgon filed a notice of appeal on August 26, 2011. *See* Notice of Appeal, Exh. 24 (ECF No. 10). The appeal was dismissed on September 16, 2011, because the notice of appeal was untimely. See Order Dismissing Appeal, Exh. 28 (ECF No. 10-4).

On February 21, 2012, Burgon filed, in the state district court, a *pro se* petition for writ of habeas corpus. See Petition for Writ of Habeas Corpus, Exh. 34 (ECF No. 10-10). Counsel was appointed, and, with counsel, Burgon filed a supplement to the petition on October 19, 2012. See Supplemental Brief in Support of Petition for Writ of Habeas Corpus, Exh. 42 (ECF No. 10-18). The state district court denied the petition in a written order filed on April 19, 2013. See Findings of Fact, Conclusions of Law and Order, Exh. 47 (ECF No. 11-1). Burgon appealed. See Appellant's Opening Brief, Exh. 59 (ECF No. 11-13). The Nevada Supreme Court affirmed on May 13, 2014. See Order of Affirmance, Exh. 64 (ECF No. 11-18).

This Court received Burgon's *pro se* federal habeas petition, initiating this action, on July 9, 2014 (ECF No. 6).

On May 13, 2015, respondents filed a motion to dismiss (ECF No. 8). Burgon responded with a motion for stay (ECF No. 19). On March 31, 2016, in light of the briefing of the motion to dismiss and motion for stay, the Court appointed counsel for Burgon, and denied the motions without prejudice. *See* Order entered March 31, 2016 (ECF No. 24).

Counsel appeared for Burgon (ECF No. 25) and filed an amended petition—now the operative petition in the case—on his behalf on April 11, 2017 (ECF No. 36). Burgon's amended petition asserts the following claims:

Ground 1(1): Burgon received ineffective assistance of his trial counsel in violation of his federal constitutional rights, because Burgon's trial counsel failed to participate in his presentence interview and failed to prepare him for the presentence interview.

Ground 1(2): Burgon received ineffective assistance of his trial counsel in violation of his federal constitutional rights, because Burgon's trial counsel failed to investigate Burgon's available defenses.

Ground 2: Burgon received ineffective assistance of his trial counsel in violation of his federal constitutional rights, because Burgon's trial counsel failed "to investigate Burgon's mental health and substance abuse history to negotiate a more favorable plea offer."

Ground 3(1): Burgon received ineffective assistance of his trial counsel in violation of his federal constitutional rights, because Burgon's trial counsel failed "to advise Burgon about the mandatory violent habitual felon statute."

Ground 3(2): Burgon received ineffective assistance of his trial counsel in violation of his federal constitutional rights, because Burgon's trial counsel failed "to object to the State's proffer of evidence regarding Burgon's two prior convictions."

Ground 4: Burgon did not enter his guilty plea knowingly, intelligently or voluntarily, in violation of his federal constitutional rights.

Ground 5: Burgon received ineffective assistance of his trial counsel in violation of his federal constitutional rights, because Burgon's trial counsel failed "to file a notice of appeal, preserve Mr. Burgon's right to a direct appeal, and advise Mr. Burgon correctly regarding his appellate rights."

Ground 6: Burgon received ineffective assistance of his trial counsel in violation of his federal constitutional rights, because Burgon's trial counsel failed "to advise him against unconditionally waiving his preliminary hearing without plea negotiations pending."

Amended Petition (ECF No. 36), pp. 16–33.

On August 1, 2017 Respondents filed a motion to dismiss the amended petition (ECF No. 46). Respondents argued that certain of Burgon's claims are barred by the statute of limitations, that certain of his claims are unexhausted in state court, and that certain of his claims are barred by the rule of Tollett v. Henderson, 411 U.S. 258 (1973). The Court ruled on that motion on March 19, 2018, dismissing one of Burgon's claims—

Ground 3(2)—on statute of limitations grounds, and denying the motion in all other respects. The Court's ruling was without prejudice to Respondents asserting a procedural default defense, or their <u>Tollett</u> defense, in their answer. <u>See</u> Order entered March 19, 2018 (ECF No. 58).

Respondents filed an answer, responding to Burgon's remaining claims, on December 3, 2018 (ECF No. 73). Burgon filed a reply on April 17, 2019 (ECF No. 79). Respondents filed a response to the reply on July 1, 2019 (ECF No. 84).

III.   <u>Discussion</u>

A.   <u>Standard of Review</u>

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73 (2003) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405–06 (2000), and citing <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state

court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Lockyer, 538 U.S. at 75 (quoting Williams, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. Id. (quoting Williams, 529 U.S. at 409). The Supreme Court has instructed that, under § 2254(d)(2), "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer, 538 U.S. at 75); see also Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

Where the state courts have denied a claim on the merits, but have provided no explanation for the ruling, the standard prescribed by section 2254(d) still applies; in such case, the petitioner bears the burden of showing that there was no reasonable basis for the state court's ruling. See Harrington, 562 U.S. at 98.

On the other hand, if the state courts did not rule on the merits of a claim, "federal habeas review is not subject to the deferential standard that applies under AEDPA to 'any claim that was adjudicated on the merits in State court proceedings.'" Cone v. Bell, 556 U.S. 449, 472 (2009) (quoting 28 U.S.C. § 2254(d)). In that case, the federal habeas court reviews the claim de novo. Id. at 472; Scott v. Ryan, 686 F.3d 1130, 1133 (9th Cir. 2012); Pirtle v. Morgan, 313 F.3d 1160, 1167–68 and n.4 (9th Cir. 2002).

B.    Ground 1(1)

In Ground 1(1), Burgon claims that he received ineffective assistance of his trial counsel in violation of his federal constitutional rights, because his trial counsel failed to

participate in his presentence interview and failed to prepare him for the presentence interview. Amended Petition (ECF No. 36), p. 16. More specifically, Burgon claims:

> As set forth [in preceding portions of the amended petition], and hereby incorporated herein, Burgon suffered (and continues to suffer) from several mental disorders. [Citations omitted.] Given Burgon's history of mental disorders, including visual and auditory hallucinations, as well as his use (and abuse) of prescription medication and illicit drugs, trial counsel should have been present during Burgon's presentence interview. At minimum, he should have helped him prepare for the interview, given the lengthy mandatory sentence of ten to twenty-five years, ten years to life, or life without the possibility of parole that Burgon was facing. The presentence interview was yet another opportunity for trial counsel to investigate and present information about Burgon's mental illness and substance abuse to the probation office and the court in mitigation for sentencing.

Id.

In the ruling on the motion to dismiss, this Court found that Burgon did not fairly present this claim in state court. *See* Order entered March 19, 2018 (ECF No. 58), pp. 7-8. The Court determined, however, that if Burgon were to return to state court to exhaust his unexhausted claims, those claims would be procedurally barred in state court, as untimely and successive, pursuant to NRS §§ 34.726 and 34.810. See id. at 12–14. The Court, therefore, considers claims raised in this case but not in state court, including this claim, to be technically exhausted, but procedurally defaulted.

In Coleman v. Thompson, the Supreme Court held that a state prisoner who fails to comply with the state's procedural requirements in presenting his claims is barred from obtaining a writ of habeas corpus in federal court by the adequate and independent state ground doctrine. Coleman v. Thompson, 501 U.S. 722, 731–32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting

from it. Murray v. Carrier, 477 U.S. 478, 496 (1986). To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. Murray, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. See McCleskey v. Zant, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." White v. Lewis, 874 F.2d 599, 603 (9th Cir. 1989), citing United States v. Frady, 456 U.S. 152, 170 (1982).

In Martinez v. Ryan, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In Martinez, the Supreme Court noted that it had previously held, in Coleman, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. Martinez, 566 U.S. at 15. The Martinez Court, however, "qualif[ied] Coleman by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." Id. at 8.

This Court determined, in ruling on the motion to dismiss, that Burgon's arguments based on Martinez raised the question of the merits of Burgon's claims; therefore, the resolution of procedural default issues was deferred until after Respondents filed an answer, and Burgon a reply.

Turning to the legal standards governing a claim of ineffective assistance of counsel, in Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test: the petitioner must demonstrate (1) that the attorney's

representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. And, to establish prejudice under Strickland, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. In analyzing a claim of ineffective assistance of counsel under Strickland, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. See Strickland, 466 U.S. at 697.

Returning to the analysis of Ground 1(1), the Court determines that Burgon does not make any showing of prejudice from his trial counsel not participating in his presentence interview and preparing him for that interview, or from his state post-conviction counsel's failure to raise this claim. Burgon claims that the presentence interview was an opportunity to present the probation office, and the sentencing court, with information about his mental illness and history of substance abuse. See Reply (ECF No. 79), p. 7. However, the presentence investigation report reflects that the probation office did, in fact, receive extensive information about Burgon's mental illness and substance abuse, and that information was included in the report. See Presentence Investigation Report, Exh. 73 (ECF No. 39-5) (filed under seal). Burgon admits, in setting forth another ground of his amended petition:

> At the sentencing hearing, the State acknowledged that the mental health issues that caused Burgon to commit the crime were in fact raised in letters and the presentence investigation report that was presented to the trial court. (ECF No. 9-21, Ex. 21, at 6:2–6:4.) Trial counsel also informed

1

2

> the trial court about Burgon's medical and mental conditions, and asked the court to impose a concurrent sentence as a result. *Id.* at 7:10–9:17.)

Amended Petition (ECF No. 36), p. 18.

3

4

5

6

7

Burgon does not show a reasonable probability of a better outcome at sentencing if further information regarding these matters had been presented. The Court determines that Burgon's state post-conviction counsel was not ineffective for failing to raise this claim. Burgon has not made a showing of cause and prejudice under *Martinez*. Ground 1(1) will be denied as procedurally defaulted.

8

C.   Ground 1(2)

9

10

11

12

13

14

15

16

17

In Ground 1(2), Burgon claims that he received ineffective assistance of his trial counsel in violation of his federal constitutional rights, because his trial counsel failed to investigate available defenses. *See* Amended Petition (ECF No. 36), pp. 17–18. More specifically, Burgon claims that his trial counsel failed to investigate the possibility of a diminished capacity defense or an insanity defense. *See id.* at 17. Burgon claims that had his counsel investigated those defenses, and properly advised Burgon about them, "Burgon could have plead not guilty by reason of insanity pursuant to Nev. Rev. Stat. § 174.035(5) and opted to proceed to trial," or "[a]t minimum, trial counsel should have advised Burgon to plead guilty but mentally ill pursuant to Nev. Rev. Stat. § 174.035." *Id.*

18

19

20

21

22

In the ruling on the motion to dismiss, this Court found that Burgon did not fairly present this claim in state court. *See* Order entered March 19, 2018 (ECFR No. 58), pp. 8–9. Therefore, this claim is potentially subject to denial as procedurally defaulted unless Burgon shows cause and prejudice on account of ineffective assistance of his state post-conviction counsel, under *Martinez*.

23

24

25

26

27

28

Under Nevada law, criminal defendants are presumed to be legally sane, and, to prevail with an insanity defense, must overcome that presumption with a preponderance of the evidence. See Williams v. State, 110 Nev. 1182, 1185, 885 P.2d 536, 538 (1994). Nevada recognizes the defense of legal insanity and applies the M'Naughten test. See, e.g., Miller v. State, 911 P.2d 1183, 1185 (1996). "To qualify as being legally insane, a defendant must be in a delusional state such that he cannot know or understand the

nature and capacity of his act, or his delusion must be such that he cannot appreciate the wrongfulness of his act, that is, that the act is not authorized by law." Finger v. State, 27 P.3d 66, 84–85 (2001).

According to the police reports, Burgon wore a stocking over his head when he entered the convenience store to rob it, and, after the robbery, led the police on a high-speed chase followed by a foot chase in an attempt to avoid arrest. Burgon makes no allegation that these aspects of the police reports are untrue. Given these circumstances, it is inconceivable that Burgon could have shown that, because of mental illness or substance abuse, he did not understand the nature and capacity of his acts, or their wrongfulness, or could not have formed the required *mens rea*. Burgon does not make any showing suggesting that any further investigation by trial counsel would have made any difference in this regard, such that Burgon would not have pled guilty. See Hill v. Lockhart, 474 U.S. 52, 59 (1985) (In context of guilty plea, Strickland prejudice prong requires petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). And, with regard to Burgon's claim that his trial counsel was ineffective for not advising him to plead guilty but mentally ill under NRS § 174.035, Burgon has not shown that he would have so pled if advised about such a plea by counsel, he has not shown that such a plea would have been available as part of a plea bargain, and he has not made any showing how he might have benefitted from such a plea at any rate. See NRS § 174.035(5) ("Except as otherwise provided by specific statute, a defendant who enters such a plea is subject to the same criminal, civil and administrative penalties and procedures as a defendant who pleads guilty."). In short, the Court finds the claim in Ground 1(2) to be insubstantial.

As this claim is insubstantial, the Court determines that Burgon's state post-conviction counsel was not ineffective for failing to assert it, and Burgon has not shown cause and prejudice to overcome the procedural default. See Martinez, 566 US at 14, 17

1    (Under Martinez, to show cause and prejudice, petitioner must show that the underlying

2    claim has some merit). Ground 1(2) will be denied on procedural default grounds.

3          D.      Ground 2

4          In Ground 2, Burgon claims that he received ineffective assistance of his trial

5    counsel in violation of his federal constitutional rights, because his trial counsel failed "to

6    investigate Burgon's mental health and substance abuse history to negotiate a more

7    favorable plea offer." See Amended Petition (ECF No. 36), pp. 18–22.

8          Burgon asserted this claim in state court, and the Nevada Supreme Court affirmed

9    the denial relief on the claim, as follows:

10                 ... [A]ppellant argues that his trial counsel was ineffective for failing
                   to investigate appellant's mental health and substance abuse history and
11                 secure a favorable plea negotiation. Appellant fails to demonstrate that his
                   trial counsel's performance was deficient or that he was prejudiced. The
12                 premise of this claim is entirely speculative. As noted above, the documents
                   before this court indicate that trial counsel was aware prior to entry of the
13                 plea of appellant's mental health issues. Appellant fails to demonstrate that
                   there was a reasonable probability of a favorable plea negotiation had trial
14                 counsel presented appellant's mental health and substance abuse history
                   to the prosecutor. Therefore, the district court did not err in denying this
15                 claim without an evidentiary hearing.

16   Order of Affirmance, Exh. 64, p. 4 (ECF No. 11-18, p. 5).

17         This Court determines that the Nevada Supreme Court's analysis, concluding that

18   Burgon does not show prejudice from his trial counsel alleged failure to adequately

19   investigate his case, is reasonable. Burgon's argument is that if trial counsel had

20   conducted an adequate investigation, he could have procured a better plea agreement

21   for Burgon. See Reply (ECF No. 79), pp. 33–35.

22         The Court  finds the Nevada Supreme Court's conclusion that such an effort would

23   be entirely speculative to be a clearly unreasonable application of extant law. Trial

24   counsel has a duty to adequately investigate the mental health symptoms of a defendant.

25   Douglas v. Woodford, 316 F.3d 1079, 1085 (9th Cir. 2003). The record indicates that

26   although trial counsel did in fact hire a licensed psychologist to conduct an examination,

27   there was no independent investigation in to Burgon's mental health status, medications

28

and substance abuse. The Court therefore agrees with Petitioner that trial counsel's investigation was insufficient.

However, the Court cannot conclude that the Nevada Supreme Court's conclusion that such information would not have a reasonable probability of changing the outcome was objectively unreasonable.  The Court agrees that Petitioner has not made a sufficient showing on this front—specifically that more investigation would have led to a more favorable plea bargain. Accordingly, the Court will  not grant relief with respect to Ground 2.

E.    Ground 3(1)

In Ground 3(1), Burgon claims he received ineffective assistance of his trial counsel in violation of his federal constitutional rights, because his trial counsel failed "to advise Burgon about the mandatory violent habitual felon statute." See Amended Petition (ECF No. 36), pp. 22–27. He claims that his trial counsel "never distinguished the discretionary and mandatory nature of the habitual criminal statutes to Burgon at any time during his representation." Id. at 23. And, he claims that his trial counsel "fail[ed] to advise Burgon that his two qualifying prior convictions would in fact expose him to the mandatory violent habitual felon statute." Id. at 23–24.

Burgon asserted this claim in state court, and the Nevada Supreme Court affirmed the denial relief on the claim, as follows:

> ... [A]ppellant argues that his trial counsel was ineffective for inducing his guilty plea with inaccurate representations about whether he qualified for violent-offender habitual criminal treatment under NRS 207.212. Appellant asserts that he was led to believe that he did not qualify for violent-offender habitual criminal treatment. In support, appellant argues that trial counsel's statement during the plea canvass that the State would need to provide proof of the prior convictions indicates that counsel did not believe that there were two qualifying convictions. Appellant further notes that notice of NRS 207.212 was only included for the first time in the amended information prepared for the plea negotiations and not in the first information, which only notices NRS 207.010. Appellant argues that there was no significant benefit to pleading guilty to two counts that could be enhanced under NRS 207.012 unless there was a mistaken belief that he was not eligible under NRS 207.012.
>
> Appellant fails to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Appellant fails to demonstrate that

13

trial counsel misrepresented whether he qualified for violent-offender habitual criminal treatment under NRS 207.012. The documents provided to this court show that appellant entered a guilty plea with the understanding that the State was seeking violent-offender habitual criminal treatment. Despite the fact that the first information only contained a citation to NRS 207.010, appellant was provided notice of NRS 207.012 in the written guilty plea agreement, the amended information, and during the plea canvass. Further, the State mentioned in the justice court that appellant faced mandatory, violent-offender habitual criminal treatment. The fact that trial counsel reiterated the State's duty to present proof of the prior convictions cannot reasonably be interpreted in the manner suggested by appellant. Further, contrary to the assertion of appellant, he received a benefit by entry of his guilty plea as he avoided two additional felony counts. Under these circumstances, appellant fails to demonstrate that there was a reasonable probability that he would not have entered a guilty plea and would have insisted on going to trial.

Order of Affirmance, Exh. 64, p. 4 (ECF No. 11-18, p. 5). The Court finds that this ruling by the Nevada Supreme Court, was reasonable.

The second amended information, which set forth the charges to which Burgon pled guilty, stated:

Defendant Clay Merritt Burgon, hereinbefore named, is placed on notice that, in accordance with the authorization of NRS 207.012 and/or 207.010, punishment imposed pursuant to the above-stated habitual felon statute is mandatory if said Defendant is found guilty on the primary offenses of robbery with use of a deadly weapon and burglary while in possession of a firearm and discretionary pursuant to NRS 207.010, if said Defendant is found guilty on the primary offenses of possession of firearm by ex-felon and stop required on signal of police officer, for which the Defendant is presently charged, as Defendant Clay Merritt Burgon has previously been convicted of two (2) violent prior felony offenses, as stated in 207.012(2), to wit:

1.     That in 2000, the Defendant was convicted in the United States District Court, District of Nevada, for the crime of armed bank robbery, Case CR-S-99-163-JBR(RJJ).

2.     That in 2005, the Defendant was convicted in the Eighth Judicial District Court, in and for the County of Clark, State of Nevada, for the crime of robbery, in Case No. C213257.

In addition, NRS 207.012(2) provides, in relevant part, "that the District Attorney shall include a count under this section in any information or shall ... file a notice of habitual criminality if an Indictment/Information is found." Furthermore, NRS 202.012(3) provides that the trial judge may not dismiss a count under this section that is included in the indictment or information.

Second Amended Information, Exh. 18, p. 4 (ECF No. 9-18, p. 5).

The Guilty Plea Agreement, which was signed by Burgon, stated:

> The State retains the full right to argue, including for consecutive time, under the mandatory Large Habitual provision of NRS 207.012. The State specifically retains the right to argue for a term of LIFE *without* the possibility of parole. Additionally, I hereby acknowledge that each of the above counts to which I am pleading guilty require the Court to sentence me as a Large Habitual Felon pursuant to NRS 207.012 based on my prior robbery convictions.

> *   *   *

> Further, I understand that the Court must sentence me pursuant to NRS 207.012 to one of the following for each count: LIFE without the possibility of parole; life with the possibility of parole, parole eligibility begins after a minimum term of TEN (10) years has been served; or a definite term of TWENTY FIVE (25) years, parole eligibility begins after a minimum of TEN (10) years has been served.

Guilty Plea Agreement, Exh. 19, pp. 1–3 (ECF No. 9-19, pp. 2–4) (emphasis in original).

And then, in the court's canvass of Burgon regarding his plea, Burgon acknowledged that he had received a copy of the second amended information, including "the habitual criminal language included with it." Reporter's Transcript of Plea, Exh. 20, pp. 5–6 (ECF No. 9-20, pp. 6–7). And, Burgon stated that he read and understood the guilty plea agreement and agreed to it. Id. at 4–5, 7 (ECF No. 9-20, pp. 5–6, 8). Furthermore, in the course of plea canvass the judge stated:

> State retains the right to argue, including for consecutive time under the mandatory large habitual conditions of 207.012. Specifically retain the right to argue for life without the possibility of parole.

> The Defendant acknowledges that the above counts he's going to plead to require sentencing under the large habitual felon, 207.012.

Id. at 3 (ECF No. 9-20, p. 4). And, the following exchange occurred during the canvass:

> THE COURT:   Furthermore, you understand that in your case it would appear that you are eligible for treatment as a habitual criminal.

> And under the large habitual criminal statute you could be sentenced on each of those charges, up to life in the Nevada Department of Prisons, without the possibility of parole.

> [THE DEFENDANT]:  Yes, sir.

> THE COURT:   And/or you could be sentenced to life with the possibility of parole after 10 years has been served.

THE DEFENDANT:  Yes, sir.

THE COURT:  Or you could be sentenced to 25 years with a minimum 10 years before parole eligibility.

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand under habitual criminal statute as well, depending upon the nature of your prior convictions, and if I understand it correctly you do qualify for this because they are both convictions for robbery, there is a mandatory adjudication as a large habitual criminal.

THE DEFENDANT:  Yeah. Yes, sir.

THE COURT:  Do you have any questions for myself or your attorney before I accept your plea.

THE DEFENDANT:  No. sir.

THE COURT:  You further understand that sentencing is completely up to the court. No one is in a position to offer or guarantee you leniency or any particular sentence at the time of sentencing.

THE DEFENDANT:  I do, sir.

Id. at 8–9 (ECF No. 9-20, pp. 9–10).

In this Court's view, Burgon's argument that he would not have pled guilty if his counsel had adequately explained to him the operation of the habitual criminal sentencing statute is belied by the record and is meritless. The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable application of, Strickland, or any other clearly established federal law, and did not result from an unreasonable determination of the facts in light of the evidence. The Court will deny relief with respect to Ground 3(1).

F.   Ground 4

In Ground 4, Burgon claims that he did not enter his guilty plea knowingly, intelligently or voluntarily, in violation of his federal constitutional rights. See Amended Petition (ECF No. 36), pp. 28–30. Burgon generally claims that this was because of his mental disorders in combination with ineffective assistance of his trial counsel. See id.

In the order on the motion to dismiss, the Court ruled that Burgon asserted part, but not all, of this claim in state court. In state court, Burgon asserted the claim that his plea was not entered knowingly, intelligently or voluntarily, because of faulty advice

from his counsel regarding the possibility that he could be sentenced pursuant to NRS § 207.012. See Order entered March 19, 2018 (ECF No. 58), p. 11; see also Appellant's Opening Brief, Exh. 59, pp. 28–31 (ECF No. 11-13, pp. 34–37); Appellant's Reply Brief, Exh. 63, pp. 3–7 (ECF No. 11-17, pp. 8–12). That portion of Ground 4 is exhausted. However, the remainder of Ground 4 was not asserted in state court.

The Nevada Supreme Court affirmed the denial of relief on the exhausted part of the claim in Ground 4 without any discussion. See Order of Affirmance, Exh. 64 (ECF No. 11-18).

The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent and voluntary. See Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969); United States v. Delgado-Ramos, 635 F.3d 1237, 1239 (9th Cir. 2011). "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749. Those circumstances include "the subjective state of mind of the defendant ...." Iaea v. Sunn, 800 F.2d 861, 866 (9th Cir. 1986). Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court stated:

> (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).

Brady, 397 U.S. at 755 (quoting Shelton v. United States, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), rev'd on other grounds, 356 U.S. 26 (1958)); see also North Carolina v. Alford, 400 U.S. 25, 31 (1970) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"). In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the evidentiary weight of the record of a plea proceeding when the plea is subject to a collateral challenge. While noting that the defendant's representations at the time of his guilty plea are not "invariably

insurmountable" when challenging the voluntariness of his plea, the Court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge, 431 U.S. at 74; see also Muth v. Fondren, 676 F.3d 815, 821 (9th Cir. 2012); Little v. Crawford, 449 F.3d 1075, 1081 (9th Cir. 2006).

As is discussed above with respect to Ground 3(1), the record reflects clearly that Burgon knew, when he pled guilty, that he could be sentenced pursuant to NRS § 207.012. There was plainly a reasonable basis for the Nevada Supreme Court's ruling, affirming the denial of relief on the claim in the exhausted portion of Ground 4. See Harrington, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

Turning to the remainder of Ground 4, which was not asserted by Burgon in state court, that part of Ground 4 is subject to denial as procedurally defaulted unless Burgon can show cause and prejudice such as to overcome the procedural default. However, because this is not a claim of ineffective assistance of trial counsel, Martinez does not apply, and ineffective assistance of state post-conviction counsel cannot operate as cause. Burgon has not asserted any other sort of cause for the procedural default. Therefore, this part of Ground 4, not asserted by Burgon in state court, will be denied on procedural default grounds.

Moreover, and in the alternative, even if Burgon could establish cause and prejudice, such that the merits of this claim were properly before this Court, the Court would find that Burgon does not show that his guilty plea was unknowing, unintelligent or involuntary because of his mental illness and substance abuse. The Court finds that claim to be completely conclusory and unsupported. See Reply (ECF No. 79), p. 14; see also id. at 15. There is no showing that Burgon was unable to enter a knowing, intelligent and voluntary guilty plea.

1

G.     Ground 5

2

In Ground 5, Burgon claims that he received ineffective assistance of his trial

3

counsel in violation of his federal constitutional rights, because his trial counsel failed "to

4

file a notice of appeal, preserve Mr. Burgon's right to a direct appeal, and advise Mr.

5

Burgon correctly regarding his appellate rights." See Amended Petition (ECF No. 36), pp.

6

30–32.

7

In the ruling on the motion to dismiss, the Court determined that Burgon did not

8

raise this claim in state court. See Order entered March 19, 2018 (ECF No. 58), p. 11.

9

Therefore, this claim of ineffective assistance of trial counsel is subject to denial as

10

procedurally defaulted unless Burgon can show cause and prejudice under Martinez such

11

as to overcome the procedural default.

12

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court set forth specific

13

standards for determining whether counsel was ineffective for failing to file a notice of

14

appeal for a criminal defendant. If it is shown that counsel disregarded the defendant's

15

specific instruction to file a notice of appeal, counsel's performance was deficient. See id.

16

at 477. If the defendant did not specifically instruct counsel to appeal, then the question

17

is: "(1) whether counsel consulted with the defendant about an appeal," and "(2) if not,

18

was failure to consult deficient performance." United States v. Sandoval-Lopez, 409 F.3d

19

1193, 1195–96 (9th Cir. 2005). If counsel "advis[ed] the defendant about the advantages

20

and disadvantages of taking an appeal, and [made] a reasonable effort to discover the

21

defendant's wishes," counsel is only deficient if he or she disregarded the defendant's

22

specific instruction regarding an appeal. Flores-Ortega, 528 U.S. at 478. If counsel did

23

not consult with the defendant regarding the possibility of an appeal, the failure to do so

24

was deficient if "there is reason to think either (1) that a rational defendant would want to

25

appeal ... or (2) that this particular defendant reasonably demonstrated to counsel that he

26

was interested in appealing." Id. at 480.

27

28

1    In this case, the guilty plea agreement that Burgon signed stated that Burgon

2    waived his right to appeal. Guilty Plea Agreement, Exh. 19, pp. 4–5 (ECF No. 9-19, pp.

3    5–6). The guilty plea agreement stated:

4         I understand this means I am unconditionally waiving my right to a
     direct appeal of this conviction, including any challenge based upon
5    reasonable constitutional, jurisdictional or other grounds that challenge the
     legality of the proceedings as stated in NRS 177.015(4). However, I remain
6    free to challenge my conviction through other post-conviction remedies
     including a habeas corpus petition pursuant to NRS Chapter 34.
7

8    Id. at 5 (ECF No. 9-19, p. 6). The guilty plea agreement stated that Burgon signed it after

9    consultation with his counsel, and his counsel thoroughly explained to him the waivers of

10   rights in the agreement. Id. at 5–6 (ECF No. 9-19, pp. 6–7). And, at the plea canvass, in

11   open court, Burgon confirmed that he read the guilty plea agreement, that he specifically

12   discussed with his attorney the rights he waived, including the right to appeal, and that he

13   believed he understood the agreement. See Reporter's Transcript of Plea, Exh. 20, p. 7

14   (ECF No. 9-20, p. 8). This is substantial evidence that Burgon's counsel consulted with

15   him regarding his right to appeal from the judgment of conviction, and that Burgon did not

16   indicate that he wished to retain his right to appeal. Burgon does not make any showing

17   to the contrary. There is no showing that a reasonable defendant in Burgon's position

18   would want to appeal, and there is no showing that Burgon reasonably demonstrated to

19   his counsel that he was interested in appealing.

20       Furthermore, even if Burgon did show that his counsel performed deficiently in not

21   filing a notice of appeal—and the Court finds that he does not—the Court would find that

22   there is no showing of prejudice. Burgon's assertion, in his amended petition, that he had

23   potentially meritorious bases for appeal is, in its entirety, as follows:

24       Trial counsel could have appealed the unconditional waiver of his
     preliminary hearing; the trial court's denial of his motion to suppress
25   evidence of prior conviction; the voluntariness of his plea; the application of
     the mandatory violent habitual felon statute; and the imposition of the
26   sentence of twenty years to life, among other meritorious issues. Trial
     counsel could have especially appealed the voluntariness of Burgon's
27   waiver of his preliminary hearing and guilty plea, given his mental disorders,
     as well as the prescription medications that he was taking during all of his
28   hearings. [Footnote: While the trial court asked Burgon rote questions about

20

his ability to understand the plea during his guilty plea canvass on March 3, 2011, ECF No. 9-20, Ex. 20, it was alerted to his mental disorders in advance of (and during) the sentencing hearing on May 5, 2011, and should have inquired further into Burgon's ability to understand the plea before proceeding with the sentencing hearing approximately two months later, ECF No. 9-21, Ex. 21.] Moreover, trial counsel knew that Burgon had received the middle range of the sentences that were available pursuant to the mandatory violent habitual felon statute, and he could have, at minimum, received a sentence of ten to twenty-five years. Trial counsel was also aware of the court's denial of Burgon's motion to suppress, and how the order may have affected Burgon's decision to plead guilty.

Amended Petition (ECF No. 36), pp. 31–32. Burgon falls far short of showing that there were grounds for an appeal with a reasonable probability of success. Burgon does not make a showing that he was prejudiced by his counsel's alleged deficient performance in not filing a notice of appeal on his behalf.

Therefore, the Court determines that Burgon's state post-conviction counsel was not ineffective for not asserting this claim, and, consequently, Burgon does not show cause and prejudice, such as to overcome the procedural default. The Court will deny the claim in Ground 5 on procedural default grounds.

H.   Ground 6

In Ground 6, Burgon claims that he received ineffective assistance of his trial counsel in violation of his federal constitutional rights, because his trial counsel failed "to advise him against unconditionally waiving his preliminary hearing without plea negotiations pending." See Amended Petition (ECF No. 36), pp. 30–32.

In the ruling on the motion to dismiss, the Court determined that Burgon did not assert this claim in state court. See Order entered March 19, 2018 (ECF No. 58), p. 12. Therefore, with regard to this claim too, Burgon must show cause and prejudice, such as to overcome the procedural default under Martinez, or the claim is subject to denial as procedurally defaulted.

The Court finds this claim of ineffective assistance of trial counsel to be meritless. Burgon makes no allegation whatsoever, and does not proffer any evidence showing, how there would have been a reasonable probability of a better outcome for him if he had not waived the preliminary hearing. It is apparent from the police reports that the

prosecution had ample evidence supporting the charges against Burgon. See Justice Court Records, Exh. 1 (ECF No. 9-1, pp. 3–8). Without any colorable suggestion of prejudice to Burgon resulting from the waiver of the preliminary hearing, Burgon's ineffective assistance of counsel claim is insubstantial, and his state post-conviction counsel was not ineffective for failing to assert such a claim. Burgon does not make a showing to overcome the procedural default of Ground 6 under Martinez. Ground 6 will be denied as procedurally defaulted.

I.    Certificate of Appealability

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also James v. Giles, 221 F.3d 1074, 1077-79 (9th Cir. 2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Applying this standard, the Court finds that a certificate of appealability is unwarranted in this case. The Court will deny Burgon a certificate of appealability.

IV.    Conclusion

**IT IS THEREFORE ORDERED** that the Amended Petition for Writ of Habeas Corpus (ECF No. 36) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is denied a certificate of appealability.

1    **IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter

2    judgment accordingly.

3

4    DATED THIS 15th day of July, 2020.

5

6    _____

7    **RICHARD F. BOULWARE,**
     **UNITED STATES DISTRICT JUDGE**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28